**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **START SKYDIVING, LLC,** | : | |
| | : | Case No. 1:20-CV-01018 |
| Plaintiff, | : | |
| | : | Judge Michael R. Barrett |
| v. | : | |
| | : | |
| **CITY OF MIDDLETOWN, et al.,** | : | **DEFENDANTS' PARTIAL** |
| | : | **MOTION TO DISMISS** |
| Defendants. | : | |

    Defendants the City of Middletown, Ohio, Matt Eisenbraun, and Daniel Dickten (collectively, the "City Defendants") hereby move the Court to dismiss some of the claims in Plaintiff's Complaint (Doc. 1). The City Defendants request that the Court entirely dismiss Counts II (Computer Fraud and Abuse Act), IV (breach of contract), and V (defamation). The City Defendants also request that the Court dismiss the individual claims against Mr. Eisenbraun and Mr. Dickten in Counts I (Fourth Amendment violation) and III (misappropriation of confidential business information). A memorandum in support is attached to this Motion.

                                                                        Respectfully submitted,

                                                                        */s/ Brodi J. Conover*
                                                                        Scott D. Phillips (0043654)*
                                                                          * *Lead and Trial Counsel*
                                                                        Brodi J. Conover (0092082)
                                                                        FROST BROWN TODD LLC
                                                                        9277 Centre Pointe Drive, Suite 300
                                                                        West Chester, Ohio 45069
                                                                        Phone: (513) 870-8200
                                                                        Fax: (513) 870-0999
                                                                        sphillips@fbtlaw.com
                                                                        bconover@fbtlaw.com

                                                                        *Attorneys for Defendants*
                                                                        *City of Middletown, Matt Eisenbraun,*
                                                                        *and Daniel Dickten*

**MEMORANDUM IN SUPPORT**

**I.    INTRODUCTION**

After many years of largely being left alone to operate as it saw fit at the Middletown Regional Airport/Hook Field, Start Skydiving is unquestionably displeased that the City has tried over the past several years to take a more active role in setting the Airport up for success moving forward.  The City began by exploring long-term plans for the Airport, which caused it to want to professionalize the Airport and turn it into an economic driver for the City beyond the largely skydiving related traffic that it has previously drawn.  That goal in and of itself was likely received by Start Skydiving as an insult.

To further that goal, the City also began discussions over the past few years about operational changes at the Airport, some of which would unquestionably make Start Skydiving's operations less convenient for them.  The City also determined that it needed to regain the responsibility of serving as the Airport's day-to-day operational manager and as the fixed-base operator (FBO)—both of which are roles that were previously held by Start Skydiving.  In sum, Start Skydiving has seen its role at the Airport significantly reduced over the past three years. For nearly a decade, Start Skydiving essentially ran the entire Airport—it was one of the Airport's largest tenants, the Airport manager, and the FBO.  Now it is a valued tenant at the Airport facing the possibility of operational changes. This lawsuit is Start Skydiving's effort to lash back at the City for what it perceives to be an unfair breakup.

The problem is that Start Skydiving lashing out against the City has resulted in a number of claims that either (1) do not belong in federal court or (2) must be dismissed because of their failure to plead proper claims.  Start Skydiving brings a breach-of-contract claim that predates the rest of the allegations in this case by nearly a decade.  The real estate claim is not appropriate for this Court and has no relation to the underlying facts and claims of this lawsuit.  Instead, it is more

1

appropriate for the state court action that already exists. Start Skydiving also brings a number of claims that fail to state a claim upon which relief can be granted. Some of these claims (Computer Fraud and Abuse Act and defamation) should be dismissed in their entirety. Other claims—the Fourth Amendment claim and misappropriation of confidential business information—should be dismissed against Mr. Eisenbraun and Mr. Dickten in their individual capacities.

## II. BACKGROUND

### A. Start Skydiving's role at the Middletown Regional Airport.

Start Skydiving, LLC came to the Middletown Regional Airport/Hook Field at the end of 2009 to conduct skydiving operations. Doc. 1, Compl., Page ID # 4. When it first arrived at the Airport, Start Skydiving entered into a 20-year lease (the "Hangar 1711 Lease") for space at the Airport. *Id.*; *see also* Doc. 1-2, Exhibit A, Page ID # 22-29. The Hangar 1711 Lease (and its subsequent amendment (Doc 1-3, Exhibit B, Page ID # 30-33)) deal only with the obligations of the City and Start Skydiving as to the real estate located in Hangar 1711. When Start Skydiving first arrived at the Airport, it did so only as a tenant.

Soon after, though, Start Skydiving became the Airport's manager and also assumed the contract as the fixed-based operator (FBO) at the Airport. Doc. 1, Compl., Page ID # 5. One privilege that the City extends to the Airport manager and the FBO is to allow it to occupy certain space within Hangar 1707 at no cost. *Id.* Because Start Skydiving was serving in those capacities, the City gave Start Skydiving access to that space. *Id.* An affiliated company of Start Skydiving's owner—Selection Management Systems, Inc.—entered into a separate lease for an entirely separate space in Hangar 1707. *Id.* As a result, Start Skydiving was serving as the Airport's manager, as the FBO, and as a tenant—in short, it had the run of the Airport.

2

### B. The City's efforts to regain control of the Airport.

In an effort to professionalize the Airport and explore options for developing it as an economic driver for the City and the region, the City took a number of steps to regain control and responsibility at the Airport. One of those steps was terminating Start Skydiving's contracts to serve as the Airport manager and as the FBO at the Airport. *Id.* at Page ID # 8. The City itself assumed those roles, which caused, perhaps understandably, friction between the City and Start Skydiving. *Id.* No longer did Start Skydiving have free reign at the Airport as its manager, the FBO, and as a tenant. Instead, Start Skydiving was relegated back to its original role: just as tenant. The problem is that Start Skydiving has had trouble adapting to this role.

### C. Procedural context of this lawsuit.

This lawsuit is just a small piece of the dispute that has long been brewing between the City and Start Skydiving. In addition to this civil-rights lawsuit, the City has filed a declaratory judgment and eviction action in the Butler County Court of Common Pleas. *See City of Middletown v. Start Skydiving, LLC, et al.*, Butler County Case No. CV 2021 01 0031. That lawsuit seeks to do a number of things: (1) declare the City's and Start Skydiving's obligations under the Hangar 1711 Lease; (2) declare the City's right to possess the Airport manager and FBO spaces in Hangar 1707; (3) a forcible entry and detainer claim for the City to recover the Airport manager and FBO spaces in Hangar 1707 (an eviction action); and (4) declare the permitted authorized uses of the Selection Management Systems, Inc. lease for the space that it leases in Hangar 1707.

One of Start Skydiving's operators—John P. Hart III—also filed a case against the City and four of its City Council members alleging that City Council improperly met in executive session to discuss all of the various Start Skydiving-related leases at the Airport. *See State ex rel. Hart v. City of Middletown, et al.*, Butler County Case No. CV 2020 12 1903. The City's mayor

3

is not part of that lawsuit because she is affiliated with (and was previously employed) with Start Skydiving.

## III. LAW AND ARGUMENT

### A. Standard of Review.

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a complaint failing to state a claim upon which relief can be granted. Fed. R. Civ. B. 12(b)(6). The allegations in the complaint must be accepted as true and all reasonable inferences should be drawn in the plaintiff's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). A legal conclusion need not be accepted as true, however, even if it is couched as a factual allegation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also do more than just recite the elements of a cause action and offer a conclusion that the plaintiff is entitled to the requested relief. *Id.* The allegations must offer more than a sheer possibility that the defendant acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In addition, Rule 12(b)(1) allows a party to seek dismissal of a complaint when the Court lacks subject-matter jurisdiction to consider the case in the first place. Fed. R. Civ. B. 12(b)(1). The plaintiff bears the burden of proving jurisdiction in order to survive a motion to dismiss. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

### B. The Court does not have supplemental jurisdiction over Start Skydiving's breach-of-contract claim; or, alternatively, it should abstain from the breach-of-contract claim.

One of Start Skydiving's claims is not like the others. In its own words, "this case is about the ongoing vindictive, corrupt, and deceitful" actions allegedly engaged in by the City and its two employees Matt Eisenbraun and Daniel Dickten. Doc. 1, Compl., Page ID # 2; *see also id.* at Page ID # 8. Yet Start Skydiving includes a breach-of-contract claim against the City that alleges the

4

City failed to comply with two terms of the Hangar 1711 Lease dating as far back as 2009—long before the current disputes between the City and Start Skydiving began to crop up. *Id.* at PageID # 18. This claim has nothing to do with the allegations that serve as the basis for Start Skydiving's claims in the Complaint. Because the breach-of-contract claim is not "so related" to the claims that this Court does possess original jurisdiction over, it is not "part of the same case or controversy" and, therefore, should be dismissed. 28 U.S.C. § 1367(a); *see also Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 (1988).

The Court does not have original jurisdiction over Start Skydiving's breach-of-contract claim—it is neither a federal question, 28 U.S.C. § 1331, nor is this a diversity-of-citizenship case, 28 U.S.C. § 1332. *See generally* Doc. 1, Compl. Instead, Start Skydiving indicates that the Court has supplemental jurisdiction over the breach-of-contract claim because it "arise[s] from the same set of operative facts." *Id.* at Page ID # 3. Unless the operative fact here is that Start Skydiving evidently wants its own way at the Middletown Regional Airport in perpetuity, there is a stark difference between a real estate breach-of-contract claim that dates back to 2009 and the remaining claims of the Complaint, which are rooted in allegations that the City and its employees hacked a Start Skydiving computer, defamed its skydiving operation, and have pursued some sort of campaign against Stat Skydiving for the past three years. Simply attaching the breach-of-contract claim to a civil-rights complaint does not give the Court jurisdiction.

Instead, the real-estate claim in the Complaint is more appropriate to be considered in state court. Not only would an Ohio common pleas court have original jurisdiction over the claim, but there is also currently an action pending in the Butler County Court of Common Pleas that, in part, deals with issues related to the Hangar 1711 Lease. *See City of Middletown v. Start Skydiving, LLC, et al.*, Case No. CV 2021 01 0031. To be sure, the City's state court case is more expansive

5

than the two limited provisions that Start Skydiving raises in its breach-of-contract claim and involves other agreements and other real property on the Airport (including an eviction action); but included in that state-court proceeding is the consideration of issues that, if decided in the City's favor, would entirely moot Start Skydiving's breach-of-contract claim here. It makes no sense for this Court to become intertwined in real estate issues that have no place in this Court in the first place. Rather, the Court should dismiss the breach-of-contract claim to allow the real estate issues to entirely proceed before the Butler County Court of Common Pleas.

Alternatively, if the Court determines that it does have jurisdiction over the breach-of-contract claim, the Court should dismiss it because of *Colorado River* abstention principles. In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the Court noted that judicial economy and federal-state comity justify a federal court's abstention when there is contemporaneous exercise of jurisdiction in state and federal courts. A federal court should consider whether abstaining would promote " 'wise judicial administration, giv[e] regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). There are a number of factors established in *Colorado River* and subsequent cases. *See Romine v. Compuserv Corp.*, 160 F.3d 337, 340-341 (6th Cir. 1998) (identifying eight factors to be balanced by a court in deciding to abstain).

The Court should abstain on Start Skydiving's breach-of-contract claim. The following factors support abstention: (1) the state court has assumed jurisdiction over property (specifically, the eviction action over the FBO and Airport manager spaces in Hangar 1707); (2) all of the parties are located in Butler County (where the state-court action is pending); (3) the state-court action is entirely real estate focused while the piecemeal litigation (specifically, the breach-of-contract) is

6

this one in federal court; (4) the law governing the breach-of-contract claim is state law; (5) there are no federal rights that need protected on Plaintiff's breach-of-contract claim; (6) this Court only has supplemental jurisdiction over this case while the state court has original jurisdiction; and (7) the state court case is slightly further along (a responsive pleading was filed by Start Skydiving two weeks ago). Only one factor opposes abstention: Start Skydiving filed its breach-of-contract claim three weeks prior to the City's state-court lawsuit. Balancing each of these factors collectively, the Court should abstain on Start Skydiving's breach-of-contract claim.[1]

There is a very clear delineation between this case and the City's state-court lawsuit. This case has to do with the City and its employees allegedly hacking into a Start Skydiving computer and acting improperly toward Start Skydiving over the past three years as the City has sought to regain operational control of the Airport. The City's case in state court deals with a variety of real estate issues related to the City, Start Skydiving, and Selection Management Systems—including the alleged breach of contract that occurred long before any of the other City activities of which Start Skydiving complains. This Court should allow the real estate issues to proceed in state court. The breach-of-contract claim should be dismissed.

### C. Start Skydiving's Complaint fails to state a claim upon which relief can be granted for a number of its counts.

Start Skydiving's Complaint offers a number of different ways that it seeks to recover based upon the allegations that the City Defendants illegally hacked and defamed its reputation. While the City Defendants dispute the merits of the counts brought by Start Skydiving, a number of the claims fail to even state a claim upon which the Court can grant relief in the first place. Two

---

[1] The City and Start Skydiving engaged in settlement discussions for months related to all of the ongoing issues at the Airport. The reason that the City did not file its state-court case sooner is because it was negotiating, in good faith, with Start Skydiving to resolve its claims. But then Start Skydiving filed this action.

7

claims—the Computer Fraud and Abuse Act count and the defamation count—should be entirely dismissed. Two other counts—the Fourth Amendment and misappropriation of confidential business information—should be dismissed against Mr. Eisenbraun and Mr. Dickten in their individual capacities.

        **1.     Start Skydiving has failed to allege facts that support a violation of the Computer Fraud and Abuse Act.**

Start Skydiving alleges that the City Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by accessing Start Skydiving's computers and/or electronic databases without authorization. Doc. 1, Compl., Page ID # 15-16. To prevail on a claim raised under the Computer Fraud and Abuse Act, a plaintiff must show that it suffered damage or loss because of an intentional, unauthorized access of a protected computer and that the access caused a loss of more than $5,000.00. The law prohibits an individual from "intentionally access[ing] a computer without authorization or exceeds authorized access, and thereby obtains – information from any protected computer." 18 U.S.C. § 1030(a)(2). While it is a federal crime to violate this provision, Congress created a private cause of action for a party that suffers damage or loss for a violation of the statute. 18 U.S.C. § 1030(g). To recover its economic damages, Start Skydiving must show that the loss must be at least $5,000. 18 U.S.C. § 1030(g); 18 U.S.C. § 1030(c)(4)(A)(i)(I). The basis for Start Skydiving's claim, however, is undercut by failing to meet the basic elements of the statute.

*First*, Start Skydiving alleges that the City and/or Mr. Eisenbraun and/or Mr. Dickten accessed their computers and/or electronic databases. Doc. 1, Compl., Page ID # 15-16. The Computer Fraud and Abuse Act, by its plain terms, does not extend protection to an "electronic database." Rather, it prohibits the intentional unauthorized access of a "computer." 18 U.S.C. § 1030(a)(2). A "computer" is an electronic, magnetic, optical, electrochemical, or other high speed

8

data processing device performing logical, arithmetic, or storage functions." 18 U.S.C. § 1030(e)(1). There is no allegation in the complaint that the City or its employees gained access to one of Start Skydiving's computers; rather, the Complaint alleges that the City Defendants used a username and password of a former Start Skydiving employee to access a third-party program that Start Skydiving uses to track its skydiving and tandem schedule. Doc. 1, Compl., at Page ID # 9. This is not a computer.

*Second*, Start Skydiving fails to show that its computers are protected under 18 U.S.C. § 1030(a)(2). To violate § 1030(a)(2), the unauthorized access must result in obtaining one of three types of information: (1) information contained in a financial record of a financial institution or contained in a consumer reporting agency; (2) information from any department or agency of the United States; or (3) information from any protected computer. 18 U.S.C. § 1030(a)(2)(A)-(C). A "protected computer" is either used by a financial institution or the federal government, affects interstate or foreign commerce, or is used in a voting system or federal election. 18 U.S.C. § 1030(e)(2). The only allegation in the Complaint is that Start Skydiving's computers (and electronic databases) "were and are protected"—with no additional insight as to *how* they're protected. Doc. 1, Compl., Page ID # 15. The fact that there is no allegation at all how Start Skydiving's computers are protected is enough for it to be dismissed. But even if not, Start Skydiving's computers would not be protected under any of the provisions in §1030(a)(2)(A)-(C). This alone warrants dismissal of this claim.

*Third*, Start Skydiving failed to actually allege any loss. The only provision under which Start Skydiving has sought recovery is § 1030(c)(4)(A)(i)(I)—which alleges that the City caused "loss to 1 or more persons . . . aggregating at least $5,000 in value." "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage

9

assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). The problem for Start Skydiving is that the Complaint only provides a "formulaic recitation of a cause of action's elements"—which "will not do." *Twombly*, 550 U.S. at 555. In fact, the Sixth Circuit has held that simply reciting the elements of 18 U.S.C. § 1030—specifically for a "loss"—does not state a claim upon which relief can be granted. *Courser v. Michigan House of Representatives*, 831 Fed. Appx. 161, 180 (6th Cir. 2020) (citing *Republic Bank & Tr. Co.*, 683 F.3d 239, 246 (6th Cir. 2012)).

*Fourth*, the allegations in the Complaint undercut the accusation that the City's purported "access" of Start Skydiving's computers was "without authorization or exceeds authorized access." The statute defines "exceeds authorized access" as "access[ing] a computer without authorization and to use such access to obtain or alter information in the computer that the access is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). "Without authorization" has not been defined by the Sixth Circuit, but the Ninth Circuit (where a significant amount of litigation regarding the Computer Fraud and Abuse Act occurs) has defined it as "when the person has not received permission to use the computer for any purpose . . . or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009). Start Skydiving's Complaint fails to allege that the City (or its employees) illegally accessed Start Skydiving's computers. In fact, the access occurred through a former Start Skydiving employee who was also employed by the City—who gave Mr. Dickten her username and password (along with permission to access the website). Doc. 1-10, Exhibit H, Page ID # 47. There is no allegation—nor there could be—that Start Skydiving took steps to revoke the employee's access by deactivating her username and password. Because

10

Start Skydiving did not revoke that employee's access and that employee gave the City Defendants access to Start Skydiving's online website portal, there can be no violation of 18 U.S.C. § 1030. The claim should be dismissed in its entirety.

### 2. Start Skydiving's defamation claim fails.

It is somewhat unclear upon what grounds Start Skydiving moves for its defamation claim. Most defamation claims—especially those that are alleged to have injured a reputation—arise out of the Fourteenth Amendment's due-process protections. *See, e.g.*, *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501-502 (6th Cir. 2007). But Start Skydiving makes no such claim here. Instead, it appears that Start Skydiving is asserting defamation under Ohio law. Under either theory, Start Skydiving has failed to state a claim upon which relief can be granted and its defamation claim against the City and Mr. Eisenbraun should be dismissed.

#### a. The complaint fails to state a federal defamation claim.

A federal defamation claim related to a reputational injury is generally grounded in a violation of the Fourteenth Amendment. *See Doe*, 490 F.3d at 501-502. Courts analyzing a defamation claim use a "stigma-plus" test to determine whether the government took action that injured a plaintiff's reputation. *Id.*; *see also Paul v. Davis*, 424 U.S. 693 (1976). It is enough for a plaintiff to show that the government damaged his or her reputation (the stigma) to succeed on a defamation claim against the government. *Doe*, 490 F.3d at 501-502. But a plaintiff must also show that the purported defamation " 'deprived [him or her] of a right previously held under state law' (the plus)." *Id.* (quoting *Paul*, 424 U.S. at 701).

Start Skydiving fails to do either. In its defamation count, Start Skydiving only alleges that Mr. Eisenbraun was quoted in a newspaper article saying that one reason the City regained control as the FBO was because of numerous complaints made about Start Skydiving by pilots—the users

11

of the FBO—at the Airport. Doc. 1, Compl., Page ID # 19. Even if the Court were to construe that the Complaint sufficiently alleges the "stigma" (a reputational harm), nothing in the Complaint alleges "the plus." Start Skydiving fails to identify how the purported defamation deprived it of a right that it previously held under state law. To the extent that Start Skydiving brings a defamation claim under the Fourteenth Amendment, it fails to state a claim upon which relief can be granted and should be dismissed.

> **b. Start Skydiving fails to sufficiently allege a defamation claim under Ohio law.**

To succeed on a defamation claim under Ohio law, Start Skydiving must show that Mr. Eisenbraun's statement to a local news organization "contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.' " *Jackson v. City of Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008) (quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 651 N.E.2d 1283, 1289 (Ohio 1995)). That allegation of defamation, however, can be overcome with a conditional or qualified privilege. *Id.* (citing *A & B-Abel Elevator Co.*, 651 N.E.2d at 1290). The burden then shifts to the plaintiff to show that the statement was made with "actual malice." *Jacobs v. Frank*, 573 N.E.2d 609 (Ohio 1991).

The Complaint alleges that the quote in the newspaper damaged Start Skydiving in two ways. First, that it resulted in the loss of the FBO contract. Doc. 1, Compl., Page ID # 19. Second, that it has discredited Start Skydiving in the local community costing it business revenue. *Id.* But even if the statement wasn't true, the statement that Mr. Eisenbraun made—that one reason the City took over as the FBO was because of complaints made against Start Skydiving—was done so in his *official* capacity as the City's Assistant Economic Director. *Id.* There are no grounds, then,

12

for the defamation claim to proceed against Mr. Eisenbraun in his individual capacity.

Even in Mr. Eisenbraun's official capacity, however, the defamation claim fails because a qualified privilege exists. In general, a statement is privileged when it is " 'fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.' " *A & B-Abell Elevator Co.*, 651 N.E.2d at 1290 (quoting *Toogood v. Spyring*, 149 Eng.Rep 1044, 1049-1050 (1834)). Understandably, qualified privilege is "deeply rooted in public policy." *Id.* This is why communications made by government officials, in their official capacity, in furtherance of their duties and providing information to the government in connection with public contracts are given a qualified privilege. *Id.* at 1291; *see also Jacobs*, 573 N.E.2d 609. The point of a qualified privilege like this is to "promot[e] the free flow of information" and ensure that the government has "competent, reliable and responsible contractors." *A & B-Abell Elevator Co.*, 651 N.E.2d at 1290-1291.

Mr. Eisenbraun's statement to a newspaper regarding a contract of the City was done in his official capacity as the City's Assistant Economic Director (further evidenced by being credited for his official position with the City in the newspaper article). There can be no dispute that the statement was made in the discharge of his public duties on behalf of the City and his responsibility as the City's liaison to the Airport. There can be no dispute that the statement was made in furtherance of a decision to not renew one of the City's public contracts. Because the statement is protected as a qualified privilege, Start Skydiving must allege facts that Mr. Eisenbraun, on behalf of the City, made the statement with actual malice. The Complaint makes no allegations that the statement was made with actual malice and it doesn't allege any facts that support that the statement was made with actual malice. In short, the statement is protected as a qualified privilege and Start Skydiving's defamation claim should be dismissed in its entirety.

13

### 3. The claims in the Complaint against Mr. Eisenbraun and Mr. Dickten in their individual capacities are barred by qualified immunity.

The Complaint contains four claims that include Mr. Eisenbraun and Mr. Dickten in their individual capacities. But the allegations against Mr. Eisenbraun and Mr. Dickten all arise from actions that each took in their capacities as an employee of the City. Mr. Eisenbraun is the Assistant Economic Director for the City. Prior to his retirement, Mr. Dickten was the Airport manager. The Complaint fails to establish any set of facts that would allow Start Skydiving to recover from Mr. Eisenbraun and Mr. Dickten personally. As a result, each of them is entitled to qualified immunity from all claims asserted against them in their individual capacities.[2]

The City Defendants have moved to entirely dismiss two claims—Computer Fraud and Abuse Act and defamation—that include individual-capacity claims against Mr. Eisenbraun and Mr. Dickten. But there remain two additional claims against each of them in their individual capacity: a Fourth Amendment violation and a misappropriation of confidential business information. In both claims, Start Skydiving fails to overcome the doctrine of qualified immunity to proceed against Mr. Eisenbraun and Mr. Dickten in their individual capacities. The claims should be dismissed.

#### a. The Fourth Amendment challenge.

Qualified immunity protects government officials and employees performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The point of qualified immunity is to protect public officials from interference with their duties. *Id.* at 806. It doesn't just protect from liability;

---

[2] This motion does not seek to dismiss the claims against Mr. Eisenbraun and Mr. Dickten in their official capacities—*only* in their individual capacities.

14

it provides immunity from suit in the first place. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To overcome a claim of qualified immunity, a complaint show that the official's conduct (1) violated a constitutional right that (2) was clearly established. *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 897 (6th Cir. 2019). The primary focus is determining the objective legal reasonableness of the public official's actions. *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999).

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const., Amend. IV. A warrantless search is generally unreasonable unless it falls within an exception to the warrant requirement. *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999). Those exceptions include, but are not are limited to: when an individual consents to the search, when there are exigent circumstances, and in a government workplace or in a school. *See, e.g.*, *Slough v. Telb*, 644 F.Supp.2d 978, 990 (N.D. Ohio 2009) (identifying a number of exceptions). The search here—if it is a search at all— did not offend the Fourth Amendment.

As an initial matter, the Complaint alleges that Mr. Dickten (not Mr. Eisenbraun) received a username and password from a former Start Skydiving employee to login to an online website that documented how many tandem jumps that Start Skydiving conducted at the Airport. Doc. 1, Compl., PageID # 9; *see also* Doc 1-10, Exhibit H, Page ID # 47. This, according to Start Skydiving, was an unreasonable search and seizure. It is hard-pressed to suggest that being given a valid username and password to access an online website is a warrantless search and seizure or that it is a clearly established constitutional violation. Because Start Skydiving failed to allege a constitutional violation, its Fourth Amendment claim against Mr. Eisenbraun and Mr. Dickten in their individual capacities should be dismissed.

And even if the Court were to determine that the individual-capacity claims against Mr.

15

Eisenbraun and Mr. Dickten are not overcome by qualified immunity, the allegation is that Mr. Dickten—not Mr. Eisenbraun—accessed Start Skydiving's online website portal. This requires that, at the very least, Start Skydiving's Fourth Amendment claim against Mr. Eisenbraun in his individual capacity to be dismissed.

### b. The misappropriation-of-confidential-business-information challenge.

Start Skydiving includes a count for "Corporate Espionage, Conversion, and Misappropriation of Busines Data" that is actually just a state-law claim for misappropriation of confidential business information and/or a trade secret under Ohio Rev. Code § 1333.61, the Ohio Uniform Trade Secrets Act. Doc. 1, Compl., Page ID # 16-17. Much like the rest of the Complaint, Start Skydiving alleges that Mr. Dickten's use of a valid username and password to access Start Skydiving's online website portal was illegal. The Complaint fails to identify how this information is confidential—including what steps Start Skydiving took to protect the information. The Complaint also fails to identify how the City used this purportedly confidential business information. Nonetheless, Start Skydiving claims this is a misappropriation of confidential business information.

The Complaint, however, fails to allege that Mr. Eisenbraun and Mr. Dickten acted outside the scope of their employment. Under Ohio law, Mr. Eisenbraun and Mr. Dickten—as employees of the City—are entitled to qualified immunity unless he acted outside the scope of his employment or otherwise acted with malice, in bad faith, or in a reckless manner. Ohio Rev. Code § 2744.03(A)(6); *Fabrey v. McDonald Village Police Dep't*, 639 N.E.2d 31, 35-36 (Ohio 1994). There is no allegation in Start Skydiving's misappropriation-of-confidential-business-information claim that Mr. Eisenbraun or Mr. Dickten acted outside the scope of their employment with the City. In addition, there are no facts—though, perhaps some conclusory legal statements—to

16

support the conclusion that either Mr. Eisenbraun or Mr. Dickten acted with malice, in bad faith, or in a reckless manner. As a result, Start Skydiving's misappropriation claim against Mr. Eisenbraun and Mr. Dickten in their individual capacities should be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Defendants the City of Middletown, Matt Eisenbraun, and Daniel Dickten respectfully ask the Court to grant their Partial Motion to Dismiss and entirely dispose of the breach-of-contract claim, the Computer Fraud and Abuse Act claim, and the defamation claim in the Complaint and dismiss Mr. Eisenbraun and Mr. Dickten in their individual capacities on the Fourth Amendment claim and the misappropriation-of-confidential-business-information claim. The City has, at all times, fully complied with the United States Constitution, Ohio Constitution, and applicable law. Because a number of claims in the Complaint fail to state a claim upon which relief can be granted, those claims should be dismissed.

    Respectfully submitted,

    */s/ Brodi J. Conover*
    Scott D. Phillips (0043654)*
      * *Lead and Trial Counsel*
    Brodi J. Conover (0092082)
    FROST BROWN TODD LLC
    9277 Centre Pointe Drive, Suite 300
    West Chester, Ohio 45069
    Phone: (513) 870-8200
    Fax: (513) 870-0999
    sphillips@fbtlaw.com
    bconover@fbtlaw.com

    *Attorneys for Defendants*
    *City of Middletown, Matt Eisenbraun,*
    *and Daniel Dickten*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the United States District Court, Southern District of Ohio, on February 5, 2020, and served upon all parties of record via the Court's electronic filing system.

                                                */s/ Brodi J. Conover*
                                                Brodi J. Conover (0092082)

4825-8723-4522